UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS

| | |
|---|---|
| Evander Pierre<br><br>Plaintiff,<br><br>V.<br><br>TransUnion LLC.,<br><br>Defendant. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

COMPLAINT AND DEMAND FOR JURY TRIAL

INTRODUCTION

I am Evander Pierre, a consumer residing at 9 Evergreen Drive, Apt. 920, Middleboro, Massachusetts 02346. I bring this action against TransUnion LLC ("TransUnion"), one of the three largest nationwide consumer reporting agencies in the United States, for its violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq. TransUnion has compiled, maintained, and published a consumer file in my name that contains multiple materially inaccurate and incomplete items of information—inaccuracies that are apparent on the face of the data itself and that TransUnion has failed to correct despite its statutory obligation to follow reasonable procedures to assure the maximum possible accuracy of the information it reports.

The violations documented herein include: (1) TransUnion's publication of a Self Financial / Lead Bank secured credit card tradeline bearing a High Balance of $1,974 on an account with a

stated Credit Limit of $1,325—a mathematical impossibility that no reasonable quality-control procedure could have allowed to appear in a consumer report; (2) TransUnion's assignment of a March 2032 removal date to an LVNV Funding LLC collection account that illegally re-ages the underlying debt beyond the 7-year limit prescribed by 15 U.S.C. § 1681c; (3) TransUnion's publication of an American Profit Recovery collection tradeline that has been on file since December 2021 but contains zero months of payment history—rendering it materially incomplete; (4) TransUnion's publication of a Verizon collection tradeline with an implausible, recurring pattern of alternating collection-status and "Not Reported" entries that is inconsistent with any legitimate account activity; and (5) TransUnion's publication of a Credit Collection Services tradeline with a removal date that implies a historical delinquency date not disclosed on the tradeline, leaving the account materially incomplete. Each of these failures violates TransUnion's core obligations under the FCRA and has caused me concrete, ongoing harm.

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which provides that any action under the FCRA may be brought in any appropriate United States district court without regard to the amount in controversy.
2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because I reside in this District, a substantial part of the events and omissions giving rise to my claims occurred in this District, and TransUnion regularly conducts business in this District.

# UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS

## PARTIES

3. I, Evander Pierre, am a natural person and a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c). I reside at 9 Evergreen Drive, Apt. 920, Middleboro, Massachusetts 02346.

4. Defendant TransUnion LLC is a Delaware limited liability company with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. TransUnion is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f), that compiles and maintains files on consumers on a nationwide basis within the meaning of 15 U.S.C. § 1681a(p). TransUnion regularly conducts business throughout Massachusetts, maintains registered agents in this Commonwealth, and is subject to personal jurisdiction in this District. TransUnion may be served at its registered agent or principal place of business.

## FACTUAL ALLEGATIONS

### A. TransUnion Maintains My Consumer File

5. On or about February 9, 2026, I obtained a copy of my TransUnion consumer report ("the Report") bearing File Number 403766521. The Report was generated on February 9, 2026, and reflects information TransUnion was maintaining and publishing about me as of that date.

6. TransUnion is required by 15 U.S.C. § 1681e(b) to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." TransUnion is further required by 15 U.S.C. § 1681i to conduct a reasonable reinvestigation upon receipt of a consumer dispute and to delete or correct any information that is inaccurate, incomplete, or unverifiable.

7. As described in detail below, the Report contains five separate categories of materially inaccurate or incomplete information, each of which is apparent on the face of the data and each of which TransUnion could have identified and corrected through basic quality-control

procedures.

### B. The Self Financial Tradeline Reflects a Mathematical Impossibility

8. The Report contains a tradeline for Self Financial, Inc. / Lead Bank (Account No. ending 69273), classified as a "Revolving Account" with a "Loan Type" of "Secured Credit Card," opened May 1, 2021.

9. The Report states the Credit Limit on this account is $1,325.

10. The Report states the High Balance on this account is $1,974.

11. A High Balance of $1,974 on a Secured Credit Card with a Credit Limit of $1,325 is a mathematical and commercial impossibility. The reported balance exceeds the stated credit limit by $649—approximately 49%. A secured credit card is by design backed by a cash deposit equal to or approximating the credit limit; the balance cannot legitimately exceed the limit. No legitimate business record of a secured credit card account could simultaneously reflect a $1,325 credit limit and a $1,974 high balance.

12. This facially impossible data could have been identified through the most basic automated quality-control check—a simple comparison of reported high balance to reported credit limit. TransUnion's failure to detect and correct this impossibility before publishing it in my consumer file reflects the absence of reasonable procedures to assure maximum possible accuracy, in violation of 15 U.S.C. § 1681e(b).

13. The Report reflects that the account was closed August 4, 2022 with Pay Status "Charge-off" and the remark "Unpaid Balance Charged Off," with an estimated removal date of September 2029. The inaccurate High Balance that exceeds the Credit Limit causes this tradeline to appear more adverse than an accurate tradeline would, inflating the apparent severity of the delinquency in the eyes of prospective creditors.

### C. TransUnion Is Re-Aging the LVNV Funding Debt Beyond the Statutory Limit

14. The Report contains a collection tradeline for LVNV Funding LLC (Account No. ending 544303000926), classified as a "Factoring Company Account," with original creditor identified as "Government Employees IN CO"—i.e., Government Employees Insurance Company (GEICO).

15. The Report reflects that LVNV Funding's file was opened on October 1, 2024, with a High Balance of $211. The Report lists the estimated removal date as March 2032.

16. The projected removal date of March 2032 is approximately 7 years and 5 months from LVNV Funding's file-open date of October 2024. This demonstrates that TransUnion is running the 7-year reporting clock from the date LVNV Funding acquired or opened its collection file—not from the date of the original delinquency that preceded GEICO's collection activity.

17. Section 605(c)(1) of the FCRA, 15 U.S.C. § 1681c(c)(1), expressly provides that the 7-year reporting period begins "upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." The acquisition of a debt by a third-party buyer is not a new delinquency and cannot restart the 7-year clock.

18. By accepting LVNV Funding's reported open date as the anchor for the removal calculation—rather than independently verifying and anchoring the clock to the original GEICO delinquency date—TransUnion has failed to follow reasonable procedures to assure maximum possible accuracy and has published a removal date that will cause adverse information to remain on my file longer than the FCRA permits. This re-aging constitutes a violation of 15 U.S.C. §§ 1681e(b) and 1681c(c)(1).

### D. TransUnion Is Publishing an American Profit Recovery Tradeline With No Payment History

19. The Report contains a collection tradeline for American Profit Recovery (Account No. ending U3837901D394), with original creditor Liberty Bay Credit Union and a High Balance of $1,992. The Report reflects that this account was opened December 29, 2021, with an estimated removal date of September 2028.

20. Despite this account having been on TransUnion's file for over four years as of the date of the Report, the tradeline contains absolutely no payment history data whatsoever. No monthly entries appear for any month. No balance history, past-due amounts, or payment amounts are reflected for any period.

21. A tradeline with a four-year reporting history that contains zero months of payment data is materially incomplete within the meaning of 15 U.S.C. § 1681e(b). The FCRA's maximum accuracy standard requires TransUnion to report not only that an account exists and carries a balance, but also to accurately reflect the account's history in a manner that gives prospective creditors and the consumer a complete and accurate picture. See Saunders v. Branch Banking & Tr. Co. of Va., 526 F.3d 142 (4th Cir. 2008) (information that is technically present but creates a misleading impression violates the FCRA).

22. The complete absence of any payment history data prevents me from verifying the accuracy of the account's history, prevents prospective creditors from making fully informed lending decisions, and makes the tradeline appear more opaque and potentially more adverse than a complete record would reflect.

**E. TransUnion Is Publishing a Verizon Tradeline With an Implausible Flickering Reporting Pattern**

23. The Report contains a tradeline for Verizon (Account No. ending 257232316), classified as a Utility Company account opened July 23, 2023 and closed March 7, 2024, with a $501 balance

reported in collection status. The estimated removal date is September 2030.

24. The payment history for this tradeline, spanning June 2024 through December 2025, shows the following pattern: collection status (COL) reported in June, July, and August 2024; "N/R" (Not Reported) in September 2024; COL in October and November 2024; N/R in December 2024; COL in January and February 2025; N/R in March 2025; COL in April and May 2025; N/R in June 2025; and COL in July through December 2025.

25. In 19 months of reported history, the account alternated between collection status and "Not Reported" on no fewer than 5 separate occasions, with N/R entries appearing in September 2024, December 2024, March 2025, and June 2025. This pattern is commercially implausible for an active collection account with a static $501 balance and no payment activity. A legitimate collection account does not repeatedly appear and disappear from a consumer's file on a quarterly basis.

26. This flickering pattern demonstrates TransUnion's failure to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b). Furthermore, the intermittent N/R entries can obscure the true date of first delinquency (DOFD) for purposes of the 7-year reporting clock under 15 U.S.C. § 1681c(c)(1) and mislead prospective creditors about the account's true reporting history.

**F. TransUnion Is Publishing a Credit Collection Services Tradeline That Is Materially Incomplete**

27. The Report contains a collection tradeline for Credit Collection Services ("CCS") (Account No. ending 1655), with original creditor Liberty Bay Credit Union and a High Balance of $211. The Report reflects that CCS opened its file on July 20, 2025, with an estimated removal date of September 2028.

28. A removal date of September 2028 for a collection account with a file-open date of July 2025

implies that TransUnion is anchoring the 7-year removal clock to an original delinquency date of approximately March 2021—nearly four and a half years before CCS opened its file. This is legally correct under 15 U.S.C. § 1681c(c)(1), which requires the clock to run from the original delinquency date rather than the collection agency's open date.

29. However, the tradeline does not disclose the original delinquency date, the original creditor's account history, or any other information that would allow me or any prospective creditor to understand why the removal date is September 2028—over three years before the 7-year period from CCS's reported open date would expire. The tradeline also contains no payment history data.

30. The failure to report the original delinquency date or any contextual information explaining the removal date renders the tradeline materially incomplete under 15 U.S.C. § 1681e(b), depriving me of the ability to verify whether the removal date is correct and whether the underlying delinquency history is being accurately reported.

**G. TransUnion's Failures Have Caused Me Concrete and Ongoing Harm**

31. As a direct and proximate result of TransUnion's violations of the FCRA, I have suffered and continue to suffer actual damages including, without limitation: (a) damage to my credit reputation and creditworthiness caused by the publication of inaccurate and incomplete adverse information in my consumer file; (b) denial of or inability to obtain credit on favorable terms as a result of the inaccurate information appearing in my TransUnion file; (c) emotional distress, anxiety, frustration, and embarrassment caused by the appearance of a mathematically impossible balance, re-aged collection accounts, and incomplete tradelines in my consumer report; (d) expenditure of significant time, effort, and resources to identify, document, and seek correction of these inaccuracies; and (e) the ongoing stigma and reputational harm of having a consumer report that materially misrepresents my actual credit history to all persons who access

my TransUnion file.

32. Each of the inaccuracies and incompletions described herein is apparent from the face of the Report itself and could have been identified through basic, automated quality-control measures. TransUnion's publication of a balance exceeding a credit limit on a secured card—with no quality-control flag or correction—reflects, at minimum, reckless disregard for its statutory obligations, and constitutes willful noncompliance within the meaning of 15 U.S.C. § 1681n. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007) ("willfully fails to comply" includes reckless disregard of FCRA requirements).

33. The remaining violations—the re-aging of the LVNV debt, the completely empty American Profit Recovery payment history, the Verizon flickering pattern, and the CCS incomplete tradeline—each independently constitute violations of 15 U.S.C. § 1681e(b), the duty to maintain maximum possible accuracy, and were, at minimum, negligently committed within the meaning of 15 U.S.C. § 1681o.

**H. Dispute and Reinvestigation**

34. I have identified the foregoing inaccuracies and intend to submit, or have submitted, formal written disputes to TransUnion identifying each specific inaccuracy described herein and providing supporting documentation. Upon receipt of each dispute, TransUnion is obligated under 15 U.S.C. § 1681i(a)(1)(A) to conduct a reasonable reinvestigation within 30 days and to delete or correct any item of information that is found to be inaccurate, incomplete, or unverifiable.

35. A reinvestigation that consists solely of forwarding an Automated Consumer Dispute Verification ("ACDV") form to the furnisher and accepting its unverified response—without independently reviewing the logical consistency of the data, comparing the reported balance to the credit limit, or verifying the DOFD against the reported removal date—does not constitute a

"reasonable reinvestigation" as required by 15 U.S.C. § 1681i(a)(1)(A). See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997); DeAndrade v. Trans Union LLC, 523 F.3d 61, 68 (1st Cir. 2008) (TransUnion's reinvestigation obligations under § 1681i require more than rubber-stamping furnisher responses).

36. To the extent TransUnion has received and responded to any of my disputes by verifying the inaccurate information as accurate without conducting an independent, substantive reinvestigation, TransUnion has violated 15 U.S.C. § 1681i and is liable for the damages set forth herein.

## CAUSES OF ACTION

## COUNT I

**Violation of 15 U.S.C. § 1681e(b)**

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

**(Against TransUnion LLC)**

37. I incorporate by reference all preceding paragraphs as if fully set forth herein.
38. Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."
39. TransUnion violated 15 U.S.C. § 1681e(b) by compiling, maintaining, and publishing the following inaccurate and incomplete items in my consumer file: (a) the Self Financial High Balance of $1,974 against a Credit Limit of $1,325—a mathematical impossibility; (b) the LVNV Funding removal date of March 2032 that re-ages the underlying debt; (c) the American Profit Recovery tradeline containing zero months of payment history despite over four years on file; (d) the Verizon tradeline reflecting an implausible flickering pattern of alternating collection

status and N/R entries; and (e) the CCS tradeline that fails to disclose the original delinquency date underlying its removal date.

40. Each of these failures is the product of TransUnion's inadequate quality-control procedures and reflects TransUnion's failure to employ the reasonable procedures that § 1681e(b) demands.

41. TransUnion's violation of § 1681e(b) with respect to the Self Financial balance impossibility was willful within the meaning of 15 U.S.C. § 1681n, entitling me to statutory damages of between $100 and $1,000, punitive damages, and attorneys' fees. TransUnion's remaining violations under § 1681e(b) were, at minimum, negligent within the meaning of 15 U.S.C. § 1681o, entitling me to actual damages and attorneys' fees.

## COUNT II

**Violation of 15 U.S.C. § 1681i**

**Failure to Conduct a Reasonable Reinvestigation Upon Dispute**

**(Against TransUnion LLC)**

42. I incorporate by reference all preceding paragraphs as if fully set forth herein.

43. Section 611(a)(1)(A) of the FCRA, 15 U.S.C. § 1681i(a)(1)(A), provides that when a consumer disputes the completeness or accuracy of any item of information in her or his file, the consumer reporting agency shall "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, and record the current status of the disputed information, or delete the item from the file."

44. Upon TransUnion's receipt of my disputes identifying each of the inaccuracies described herein, TransUnion is obligated to conduct an independent, substantive investigation—not merely to forward an ACDV to the furnisher and accept its response as conclusive. This is particularly true where the inaccuracy is facially apparent from TransUnion's own data, as with a balance exceeding a credit limit on a secured card, and where the furnisher's "verified as accurate"

response would be logically impossible to credit.

45. To the extent TransUnion has received my disputes and failed to conduct a reasonable reinvestigation—including by verifying manifestly impossible or incomplete data as accurate without independent investigation—TransUnion has violated 15 U.S.C. § 1681i.

46. As a result of TransUnion's failure to conduct a reasonable reinvestigation, the inaccurate and incomplete items have remained in my consumer file, causing me continued and ongoing actual damages.

47. TransUnion's violations of § 1681i were willful and/or negligent within the meaning of 15 U.S.C. §§ 1681n and 1681o, entitling me to statutory damages, actual damages, punitive damages, and attorneys' fees as appropriate.

## COUNT III

**Violation of 15 U.S.C. § 1681c(c)(1)**

**Publication of Information Beyond the Statutory Reporting Period (Re-Aging)**

**(Against TransUnion LLC)**

48. I incorporate by reference all preceding paragraphs as if fully set forth herein.

49. Section 605(c)(1) of the FCRA, 15 U.S.C. § 1681c(c)(1), provides that the 7-year reporting period for a delinquent account placed for collection runs from "the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity." No subsequent assignment, sale, or acquisition of the debt by a third party may extend or restart this period.

50. TransUnion has assigned a removal date of March 2032 to the LVNV Funding tradeline based on LVNV's file-open date of October 1, 2024, rather than based on the original GEICO delinquency date. This extends the reporting period beyond what § 1681c(c)(1) permits.

51. TransUnion's failure to independently verify and apply the correct DOFD for collection accounts

purchased by debt buyers—and its acceptance of debt buyers' file-open dates as the anchor for removal date calculations—constitutes a systemic failure to follow reasonable procedures and a violation of 15 U.S.C. §§ 1681c(c)(1) and 1681e(b).

52. As a result of this re-aging, adverse collection information that the FCRA requires to be removed at an earlier date will continue to appear in my consumer file and be reported to prospective creditors, causing me ongoing actual harm.

## PRAYER FOR RELIEF

WHEREFORE, I respectfully request that this Court:

a. Enter judgment in my favor and against TransUnion LLC on all Counts;

b. Award actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1) in an amount to be proven at trial;

c. Award statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

d. Award punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) in an amount sufficient to deter TransUnion from future violations of the FCRA;

e. Award the costs of this action and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

f. Order TransUnion to immediately delete or correct the Self Financial High Balance to an amount at or below the stated Credit Limit, or to remove the tradeline if the correct balance cannot be verified;

g. Order TransUnion to correct the LVNV Funding removal date to reflect the 7-year period running from the original GEICO delinquency date, as required by 15 U.S.C. § 1681c(c)(1);

h. Order TransUnion to supplement the American Profit Recovery tradeline with complete

       payment history data or, if such data cannot be verified, to delete the tradeline;

i.   Order TransUnion to correct the Verizon tradeline to reflect an accurate and consistent reporting history and to ensure the DOFD is properly anchored;

j.   Order TransUnion to supplement the Credit Collection Services tradeline to disclose the original delinquency date and complete account history, or to delete the tradeline if such information cannot be verified;

k.   Enjoin TransUnion from republishing the inaccurate information identified herein without first conducting a genuine reinvestigation and obtaining verified, accurate data; and

l.   Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, I hereby demand a trial by jury on all claims and issues so triable.

Respectfully submitted,

*/s/ Evander Pierre*

Evander Pierre, Plaintiff

9 Evergreen Drive, Apt. 920

Middleboro, Massachusetts 02346

(857) 354-1334

Dated: March 4, 2026